IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ADETUNMBI ADEWAMI | * |
| Plaintiff, | * |
| v. | * Civil No. 8:23-cv-01065-PJM |
| ARISE MEDIA INC. (NIGERIA) | * |
| Defendant. | * |

### MEMORANDUM OPINION

On April 20, 2023, Adetunmbi Adewami ("Adewami") through counsel, filed this action against Arise Media Inc., Arise Media Inc. (Nigeria), and Arise TV Ltd (UK).[1] Arise Media Inc. (Nigeria) ("Arise"), is a for-profit, limited-liability corporation registered in Nigeria. Compl. ¶ 7, ECF No. 1. In his complaint, Adewami alleges claims of Defamation (both libel and libel per se), False Light Invasion of Privacy, Infliction of Emotional Distress (both intentional and negligent), and Common-Law Misappropriation of Adewami's Image and Likeness. *Id.* at ¶¶ 17–53. Although Adewami has notified the Court that service was effectuated on Arise, Arise has not answered. ECF No. 12. Adewami has asked for and had Default entered by the Clerk. ECF No. 6; ECF No. 7. He has now filed a Motion for Default Judgment. ECF No. 12. Having reviewed the submitted materials, the Court finds that no hearing is necessary. For the reasons that follow, the Court finds that the case must be **DISMISSED** for lack of jurisdiction. Accordingly, the Motion for Default Judgment is **MOOT**.

### I. BACKGROUND

---

[1] On February 9, 2024, Adewami filed a Notice of Voluntary Dismissal as to the "actions against Arise Media Inc[.] and Arise TV Ltd (UK) . . . without prejudice and in its entirety." ECF No. 11. On February 12, 2024, the Court entered a Marginal Order approving Adewami's Notice of Voluntary Dismissal without prejudice. ECF No. 15.

1

Arise is a media company whose "aim is to bring to [its] African and global African diaspora audiences the most current information on all that is occurring around the world paying in particular attention to news relating to and affecting Africans worldwide." Compl. ¶ 13. Adewami is the "lead Pastor of Christ Royal Assembly for All Nations International which is headquartered in Hyattsville, Maryland." *Id.* at ¶ 2. On April 27, 2022, Arise "published and broadcast[ed]" a news article titled, "PASTOR CHARGES N310K FOR HEAVEN." *Id.* at ¶ 1. Adewami claims that this "false and offensive broadcast was aired and disseminated globally through the internet and to the thousands of Nigerians who live in Maryland." Decl. ¶ 7, ECF No. 12-2. He asserts the article "falsely used [his] image and picture" and "maliciously claimed" that he was "charging congregants ₦ 310,000.00 to grant them a fly to heaven." Compl. ¶ 1. Adewami alleges the circulation of this article over the internet reached both himself and his congregants in the State of Maryland, damaging his "reputation as a cleric, pastor, and Christian missionary" to the point that he "los[t] members of his congregation." *Id.* at ¶ 23. Adewami further claims that this reputational harm has resulted in "severe and serious" emotional distress which he has experienced in the State of Maryland. *Id.* at ¶ 46.

Adewami filed suit on April 20, 2023, asserting claims of Defamation – Libel, Defamation – Libel Per Se, False Light Invasion of Privacy, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Common-Law Misappropriation of Adewami's Image and Likeness. *Id.* at ¶ 17–53. The record reflects that Arise was served with the Complaint on May 9, 2023. ECF No. 5. Proof of service was filed with the Court on June 15, 2023. *Id.* Arise did not respond within the requisite time period, and Adewami moved for Entry of Default against Arise on July 1, 2023. ECF No. 6. On September 12, 2023, the Clerk of the Court issued an Order

2

of Default and Arise was sent a Notice of Default on the same day. ECF No. 7; ECF No. 8. Adewami filed a Motion for Default Judgment on February 9, 2024. ECF No. 12-1.

## II. STANDARD OF REVIEW

### A. Default Judgment

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Once default has been entered by the clerk, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). If liability is established, the Court must then determine the appropriate amount of damages. *Id.* at 780–81.

### B. Personal Jurisdiction

The Fourth Circuit has held, "any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void." *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *3 (D. Md. Sept. 13, 2019) (quoting *Koehler v. Dodwell*, 152 F.3d

304, 306–07) (4th Cir. 1998). Indeed, "it [is] prudent to determine, prior to entry of a default judgment," whether the court can exercise personal jurisdiction over a defendant. *Id.*

For this Court to exercise "personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the "limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause," the statutory and constitutional analyses merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)).

The Supreme Court has recognized two different types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A court may exercise general jurisdiction over a corporation when "their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* at 919 (internal citations and quotations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal citations and quotations omitted). By contrast, a court may assert specific jurisdiction over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, the Fourth Circuit established the operative test for establishing specific jurisdiction in the context of electronic activity. 293 F.3d 707, 714 (4th Cir. 2002). The Fourth Circuit held that:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with manifested intent of engaging business or other interactions in the State thus creating in a person within the State potential cause of action cognizable in courts located in the State.

*Id.* The Fourth Circuit stated that this "standard for reconciling contacts through electronic media with standard due process principles is not dissimilar to that applied by the Supreme Court in *Calder v. Jones*." *ALS Scan*, 293 F.3d at 714 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

In *Young v. New Haven Advocate*, the Fourth Circuit clarified and applied the above test to a set of facts similar to the facts in this case. 315 F.3d 256, 258 (4th Cir. 2002). In *Young*, a Connecticut newspaper published an article about "the allegedly harsh conditions at [a] Virginia prison." *Id.* at 259. The article referenced a class action suit inmates had filed against Warden Young (the plaintiff). *Id.* Moreover, the article reported the presence of Confederate Civil War memorabilia in Warden Young's office. *Id.* Warden Young proceeded to sue the newspaper claiming the articles implied that he was a racist. *Id.* Warden Young argued that the district had specific jurisdiction over the newspaper defendants because:

> (1) the newspapers, knowing that Young was a Virginia resident, intentionally discussed and defamed him in their articles, (2) the newspapers posted the articles on their websites, which were accessible in Virginia, and (3) the primary effects of the defamatory statements on Young's reputation were felt in Virginia.

*Id.* at 261–62. Ultimately, the Fourth Circuit held that the newspaper did not have sufficient contacts with Virginia to permit the district court to exercise specific jurisdiction over them. *Id.* The Fourth Circuit reasoned that "when the Internet activity is, as here, the posting of news articles on a website, the *ALS Scan* test works more smoothly when parts one and two of the test are considered together." *Young*, 315 F.3d at 263. The critical inquiry is "whether the newspapers manifested an intent to direct their website content . . . to a Virginia Audience." *Id.* The Fourth Circuit further stated that "[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers." *Id.* After examining the overall content of the website, where the ads were targeted, and the general "thrust and content" of the articles, the Fourth Circuit concluded the newspaper was not targeting a Virginia audience. *Id.*

### III. DISCUSSION

The Court finds that it lacks personal jurisdiction over Arise. First, the Court does not have general jurisdiction over Arise because Arise is not incorporated in Maryland, does not have its principal place of business in Maryland, and has no explicit affiliations with Maryland. *See Daimler AG*, 571 U.S. at 137; *Goodyear Dunlop Tires Operations*, 564 U.S. at 924. Second, the Court does not have specific jurisdiction because there are not sufficient minimum contacts between Arise and the State of Maryland such that Arise could have "reasonably anticipated being haled into court [in Maryland] to answer for the truth of the statements made in [its] article[ ]." *Calder*, 465 U.S. at 790; *see also Int'l Shoe Co.*, 326 U.S. at 316.

As this is a case regarding a "news article" (albeit in broadcast format) accessible online, the Court looks to the *ALS Scan* test applied in *Young*. *Young*, 315 F.3d at 258. The core inquiry is "whether [Arise] manifested an intent to direct" the article at a Maryland audience. *Id.* at 263. The Court finds it did not.

6

At the outset, it is important to note that, aside from the initial television broadcast by Arise, there is no indication that Arise ever circulated the news broadcast online. All references Adewami makes to Arise's broadcast in his Complaint stem from other online news outlets or social media sites reporting on the initial broadcast. Compl. ¶¶ 20–24 nn.4–5. Nonetheless, even assuming that Arise was responsible for providing online access to its broadcast, Arise does not have the requisite minimum contacts with this jurisdiction for the Court to assert personal jurisdiction.

First, the general "thrust and content" of the broadcast does not support Adewami's claim Arise targeted a Maryland audience. *Young*, 315 F.3d at 263. This is illustrated by the fact that the broadcast never once mentions the State of Maryland. *See* Compl. ¶ 1.[2] Indeed, the broadcaster merely states Adewami is a "Nigerian pastor identified as Ade Abraham of Christ High Commission Ministry in Kaduna State." *Id.* n.1. Although the reporters speak about Adewami's alleged activities related to Nigeria, the article never references activities or victims in the State of Maryland. *See id.* Moreover, in the news report itself, one of the broadcasters clearly states, "I cannot believe this is happening in Nigeria." *Id.* As such, the content of the article does not support Adewami's claim Arise targeted a Maryland audience.

Second, Adewami's claim of "losing members of his congregation" in Maryland because the "news article" was accessible online also does not indicate Arise targeted a Maryland audience. Compl. ¶ 23. The mere fact that the information was available on the internet is not sufficient to demonstrate targeting. *See ALS Scan*, 293 F.3d at 714. The test from *ALS Scan*, "requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state" for specific jurisdiction to be proper.

---

[2] The Complaint states that a copy of the broadcast is publicly available at youtube.com/watch?v=P2HsHVUfyK0. *Id.* n.1.

7

*Young*, 315 F.3d at 262-63 (citing *ALS Scan*, 293 F.3d at 714). Here, no such proof exists and, therefore, even if Arise had "place[d its broadcast] on the Internet" it would not, by so doing "subject [itself] to jurisdiction in each State into which the electronic signal is transmitted and received." *ALS Scan*, 293 F.3d at 714.

Third, Adewami alleges Arise makes the following statement on its website: "[o]ur aim is to bring to our African and global African diaspora audiences the most current information on all that is occurring around the world paying in particular attention to news relating to and affecting Africans worldwide." Compl. ¶ 11. Adewami contends that this statement, in-conjunction with the fact that "[t]ens of thousands of Nigerian immigrants live in the State of Maryland," illustrates that Arise "broadcast[ed] its defamatory statements to individuals with the state," thereby permitting this Court to exercise personal jurisdiction over Arise. *Id.* at ¶¶ 11–12. This connection is far too attenuated to demonstrate that Arise directed its article to a Maryland audience. In *Young*, even when the entire article was premised on activities that occurred in Virginia, the Federal Court in Virginia lacked specific jurisdiction because the newspapers did not post materials on the Internet with the "manifest intent of targeting Virginia readers." *Young*, 315 F.3d at 264.

Finally, although the "news article" about Adewami was accessible in Maryland, and although he contends he has suffered various injuries in Maryland, Compl. ¶ 11, this too, is insufficient to establish specific personal jurisdiction. As discussed in *Young*, "although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction . . . is to be upheld." 315 F.3d at 262 (alterations and omission in original) (quoting *ESAB Grp., Inc. v. Centricut, Inc.*,

126 F.3d 617, 625–26 (4th Cir. 1997). Merely broadcasting a "news article" that became accessible on the internet within the state is not sufficient to show a "defendant's own . . . contacts with the state." *Id.*

## IV. CONCLUSION

For the foregoing reasons, the case is **DISMISSED** for lack of jurisdiction, and the Motion for Default Judgment is **MOOT**.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

June 25, 2024

9